IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHARLES COLLINS,

      Plaintiff,                   No. 2:08-cv-0586 FCD KJM PC

    vs.

D.K. SISTO, et al.,

      Defendants.            FINDINGS & RECOMMENDATIONS

_____/

       Plaintiff, a Muslim, is a California prisoner proceeding pro se with an action for violation of his civil rights under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a).[1]  He has brought the action against certain California Department of Corrections and Rehabilitation (CDCR) officials;

---

[1] RLUIPA provides, in pertinent part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
>
>     (1)    is in furtherance of a compelling governmental interest; and
>     (2)    is the least restrictive means of furthering that compelling governmental interest.

1

it is proceeding on plaintiff's claims that Defendants Pfandler, Nasir, Brumfield and Stiles failed to provide kosher meals conforming to plaintiff's Muslim beliefs.  Defendants have filed a motion to dismiss for failure to state a claim.  Plaintiff has filed an opposition, and defendants a reply.

I.      Plaintiff's Claims

Plaintiff argues that refusing to provide kosher meals to Muslim inmates is a violation of RLUIPA and a violation of plaintiff's rights under the First, Fifth, Ninth, Tenth and Fourteenth Amendments.  The court considers plaintiff's RLUIPA, First Amendment and Fourteenth Amendment Equal Protection claims as to all defendants, and his Fourteenth Amendment Procedural Due Process claim as to defendants Brumfield and Stiles only.  Compl. at 1-13; Order filed May 23, 2008 (Docket No. 4).

While plaintiff alleges that defendants violated his Fifth Amendment due process rights, the Due Process Clause of the Fourteenth Amendment is more appropriately applied to state actors.  Lee v. City of Los Angeles, 250 F.3d 668, 687 (9th Cir. 2001).  Because defendants are all prison officials employed by the State of California, plaintiff's procedural due process claim is more appropriately analyzed as part of his existing Fourteenth Amendment claim. Compl. ¶ 26. [2]

II.     Factual Background

In his complaint, plaintiff asserts that CDCR officials refuse to provide kosher meals for inmates of Muslim faith.  Plaintiff states that his religious beliefs prohibit a purely

---

[2] Plaintiff also states that defendants violated "his rights reserved under the Ninth or Tenth Amendments." Compl. ¶ 26. Ninth Amendment claims are generally made when a plaintiff seeks to establish an inherent right not already enumerated in the Constitution. Nordyke v. King, 364 F.3d 1025, 1029 (9th Cir. 2004). However, the Constitution already enumerates the right to free exercise of religion under the First Amendment, and the right to procedural due process and equal protection under the Fourteenth Amendment. Here, plaintiff fails to point out any specific inherent right that was allegedly violated. The Tenth Amendment is generally invoked when dealing with matters of federalism. Stone v. City of Prescott, 173 F.3d 1172, 1174-75 (9th Cir. 1999). Plaintiff does not claim that the federal government is encroaching on powers reserved for the state or the people.

vegetarian diet and require a diet of Halal meat prepared "consistent with the methodology approved of by Allah in His Qur'an…". Compl., Ex. B.

From October 3, 2006, through January 25, 2007,[3] plaintiff states he applied for and was granted a kosher Muslim diet card in accordance with Title 15 of the California Code of Regulations, Section 3054.3. Compl. ¶¶ 5-6, Exs. A, B & C. Plaintiff asserts that he presented his Muslim diet card on or about January 26, 2007, to defendant Pfandler, the culinary supervisor, who advised plaintiff to return the following day to receive a kosher Muslim meal. Id. ¶ 7. Plaintiff states that on or about January 27, 2007, and January 28, 2007, defendant Pfandler, under orders from defendant Nasir, a Muslim Chaplain at the prison, refused to serve plaintiff a kosher Muslim meal when requested. Id. ¶ 9.

Plaintiff alleges that defendant Brumfield, an appeals examiner and associate warden, denied plaintiff's 602 appeal on or about March 30, 2007, because "[t]here (were) no specific provisions" for kosher Muslim meals at California State Prison, Solano. Id. at 2-3, ¶ 11 & Ex. D.

Plaintiff contends that on or about June 3, 2007, defendant Stiles, an appeals examiner and the acting warden, denied plaintiff's appeal for a kosher Muslim diet plan, stating that plaintiff should instead apply for the vegetarian diet plan. Id. at 2-3, ¶ 12.

As noted, plaintiff asserts that defendants' actions violated RLUIPA and plaintiff's rights arising under the First, Fifth and Fourteenth Amendments. Plaintiff seeks monetary damages and injunctive relief.

III.   Defendants' Motion

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6), asserting that plaintiff's complaint fails to state a claim upon which this court can grant relief.

---

[3] Plaintiff actually writes in the complaint that he received his Kosher meal card on January 25, 2006. This would, however, mean that plaintiff received his card before he applied for it on October 3, 2006. The obvious typographical error has been corrected to January 25, 2007.

3

Defendants argue they are exempt from civil suit under the doctrine of qualified immunity. Defendants Brumfield and Stiles argue they were only involved in this matter as prisoner appeals personnel and are insulated against plaintiff's civil suit because inmates have no constitutional right to a grievance process.

IV.     Motion to Dismiss Standard

When considering whether a complaint states a claim upon which relief can be granted, the court must accept the allegations as true, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), and construe the complaint in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Still, to survive dismissal for failure to state a claim, a pro se complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Furthermore, a claim upon which the court can grant relief must have facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. Attachments to a complaint are considered to be part of the complaint for purposes of a motion to dismiss for failure to state a claim. Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

V.      Analysis

Defendants claim they are entitled to qualified immunity. Defendants argue that even if plaintiff establishes a deprivation of his constitutional rights, those rights were not clearly established law at the time of the alleged violations and, thus, plaintiff fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). Qualified immunity provides immunity from suit for

1 monetary damages, not injunctive relief. Los Angeles Police Protective League v. Gates, 995
2 F.2d 1469, 1472 (9th Cir. 1993). Further, qualified immunity is not available to individuals sued
3 in their official capacities. Hallstrom v. City of Garden City, 991 F.2d 1473, 1482 (9th Cir.
4 1993). Thus, defendants' qualified immunity argument is cognizable only insofar as they seek
5 immunity from monetary damages in their individual capacities.

6 Government officials performing discretionary functions generally are shielded
7 from liability for civil damages insofar as their conduct does not violate clearly established
8 statutory or constitutional rights of which a reasonable person would have known. Harlow v.
9 Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a governmental officer is immune
10 from suit based on the doctrine of qualified immunity, the court considers two questions. One is,
11 taken in the light most favorable to the party asserting the injury, do the facts alleged show the
12 officer's conduct violated a statutory or constitutional right? Saucier v. Katz, 533 U.S. 194, 201
13 (2001). A negative answer ends the analysis, with qualified immunity protecting defendant from
14 liability. Id. If a constitutional violation occurred, the court further inquires "whether the right
15 was clearly established." Id. "If the law did not put the [defendant] on notice that [his] conduct
16 would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Id.
17 at 202. The inquiry into whether a right was clearly established "must be taken in light of the
18 specific context of the case, not as a broad general proposition." Id. at 201. "[T]he right the
19 official is alleged to have violated must have been 'clearly established' in a more particularized,
20 and hence more relevant, sense: The contours of the right must be sufficiently clear that a
21 reasonable official would understand that what he is doing violates that right." Anderson v.
22 Creighton, 483 U.S. 635, 640 (1987).

23 The district court may decide the order of addressing the two prongs of the
24 qualified immunity analysis in accordance with fairness and efficiency and in light of the
25 circumstances of a particular case. Pearson v. Callahan, ___ U.S. ___, 129 S.Ct. 808 (2009). In
26 this case, defendants accept for sake of argument that plaintiff has sufficiently pled the violation

of a constitutional right. Mot. at 6. They contend that qualified immunity is appropriate because "the law is not clearly established that Plaintiff has a right to Halal food." Id. Therefore the court focuses only on the "clearly established" prong of the qualified immunity analysis as to each challenged claim.

### A.   RLUIPA Claim

While no Ninth Circuit case of binding precedential value has explicitly addressed whether qualified immunity applies to claims brought under RLUIPA, the court has on one occasion analyzed a qualified immunity defense to an RLUIPA claim very similar to the one at bar. See Sefeldeen v. Alameida, 238 Fed.Appx. 204, 2007 WL 1585599 (9th Cir. 2007).[4] The doctrine also has been applied to RLUIPA claims in other fora. See David v. Giurbino, 488 F.Supp.2d 1048, 1057-59 (S.D. Cal. 2007); Salahuddin v. Goord, 467 F.3d 263, 273 (2nd Cir. 2006); Lovelace v. Lee, 472 F.3d 174, 196-97 (4th Cir. 2006). Moreover, the doctrine applies generally to federal statutory rights as well as to constitutional entitlements. Harlow, 457 U.S. at 818.

As to whether his right to a kosher meal was clearly established under RLUIPA at the time he was refused one, plaintiff relies on Mayweathers v. Terhune, 2001 WL 804140 (E.D. Cal. 2001). Specifically, plaintiff argues that defendants knew about a "permanent injunction" issued by the court requiring the prison to provide Muslims at the Solano prison with Halal meat. However, the decision in Mayweathers does not mention this injunction nor does it establish or even address a prisoner's right to a kosher Muslim meal. The only reference to a kosher Muslim diet is found in an order in Mayweathers v. Terhune, CIV S-96-1582 LKK JFM P, filed August 31, 2000. This order also does not establish a prisoner's right to kosher Muslim food but states simply that the parties involved in that litigation "have reached an agreement to settle plaintiffs'

---

[4] Although Sefeldeen cannot stand as precedent because it was not chosen for publication in the Federal Reporter, the court may cite it as provided by Federal Rule of Appellate Procedure 32.1(a) and Ninth Circuit Rule 36-3.

claims regarding ... dietary restrictions." Order to Give Notice (Aug. 31, 2000).  A claim that a constitutional right has been violated based on an undisclosed private settlement agreement is a far cry from the Supreme Court's requirement that the law be "sufficiently clear" so that "a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640.  Mayweathers provides no guidance on this issue.

RLUIPA went into effect in 2000, and there remains a dearth of definitive statements from the Ninth Circuit clarifying rights under the statute's broad provisions.  Aside from Sefeldeen, the only other case addressing an inmate's right to meals in conformity with his religious diet appears to be Shakur v. Schriro, 514 F.3d 878 (9th Cir. 2008).  Shakur did not conclusively state that refusing to provide that Muslim inmate a kosher meal was a prima facie violation of RLUIPA, nor did the court analyze the question within a qualified immunity framework.  Even if Shakur had answered the question, however, it would be of little value in this case, because Shakur was not announced until one year after the incidents that gave rise to plaintiff's claims here.

In sum, there was no clearly established law that would have provided notice to a California prison official in January 2007, when the alleged incidents occurred, that withholding kosher or Halal food from a Muslim prisoner was a violation of RLUIPA.  Defendants' qualified immunity defense shields them from liability and plaintiff's RLUIPA claims should be dismissed.

      B.    First Amendment Claim

Inmates retain their rights under the First Amendment while incarcerated, "including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (citations omitted).  Although Saucier does require that a clearly established constitutional right be narrowly defined for purposes of a qualified immunity analysis, in Anderson the Supreme Court stated that "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held

7

unlawful but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson, 483 U.S. at 640 (citations omitted). Defendants are correct in their assertion that there are no precedential cases specifically establishing a prisoner's First Amendment right to kosher meals or Halal meat, but in this instance their argument oversimplifies the analysis. The question for determining whether plaintiff had a clearly established constitutional right is not whether a higher court has specifically held that depriving Muslim prisoners of Halal meat or kosher meals is unlawful; the question is whether it was apparent, under pre-existing law, that depriving a prisoner of a religious diet was unlawful. As relevant to this case, in McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987), the court held that "[i]nmates ... have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion."

In his complaint, plaintiff states that defendants were aware plaintiff was requesting a meal that conformed to his religious beliefs. Compl. ¶¶ 7-9, 11-12. Plaintiff asserts he was deprived of his dietary needs by defendants Pflander and Nasir, who refused to serve plaintiff a kosher Muslim meal, and by defendant Stiles who refused plaintiff's request to accommodate his religious dietary requirements. Id. By alleging that defendants deprived plaintiff of food sufficient to satisfy the dietary laws of his religion, plaintiff has stated a claim that falls under the general protection articulated in McElyea. A reasonable official would have known at the time plaintiff made his request that withholding a kosher meal from plaintiff was a constitutional violation. The complaint therefore states a claim that defendants violated a clearly established constitutional right.

  C. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of life, liberty or property without appropriate procedural protections. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself..., or it may arise from an expectation or interest created by state laws or policies." Id. To plead a procedural due process violation, a plaintiff must allege: (1) a life, liberty or property interest

8

exists and has been subject to an interference by the state; and (2) the procedures attendant upon the deprivation of an existing interest were constitutionally insufficient. <u>Kentucky Dept. of Corrections v. Thompson</u>, 490 U.S. 454, 460 (1989).

An inmate has no free-standing constitutional right to a grievance process. <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988). Without a liberty interest, a plaintiff has no procedural due process rights at stake in the grievance process. <u>Id.</u> Consequently, plaintiff's complaint against defendants Brumfield and Stiles fails to state a claim insofar as plaintiff seeks a remedy for a violation of his rights under the procedural due process clause of the Fourteenth Amendment. Because plaintiff has no right to a prison grievance process to begin with, plaintiff cannot claim that defendants Brumfield and Stiles deprived him of a liberty interest by allegedly mishandling his 602 appeal. Further, because plaintiff's only complaint against defendant Brumfield is that he "denied [p]laintiffs (sic) 602 appeal," plaintiff's claim against defendant Brumfield should be dismissed entirely.

Defendants argue that all of plaintiff's claims against defendant Stiles should be dismissed as well because Stiles' only action was with respect to plaintiff's administrative appeals. However, plaintiff's allegations against defendant Stiles are properly construed in light of his position as acting warden. <u>See</u> Compl. at 2-3, ¶ 12. Plaintiff asserts that Stiles "deliberately denied to Plaintiff his Religiously Mandated Dietary Law Requirement and insisted that Plaintiff continue to violate[] the Qur'an...." <u>Id.</u> ¶ 12. As acting warden, it was within defendant Stiles' power to either grant plaintiff this type of meal, or make changes to the provisions offered by the prison if a kosher Muslim meal was not available at that time. 15 Cal. Code Regs. § 3380. Thus, while plaintiff's procedural due process claim against defendant Stiles fails because prisoners have no right to a grievance process, defendant Stiles is not shielded under this theory against plaintiff's other claims based on the alleged denial of kosher meals.

/////

/////

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss be granted as follows:

   a. Plaintiff's claims under the Religious Land Use and Institutionalized Persons Act be dismissed;

   b. Plaintiff's Fourteenth Amendment Procedural Due Process Clause claim be dismissed; and

   c. Defendant Brumfield be dismissed.

2. Defendants' motion to dismiss otherwise be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 8, 2009.

_____
U.S. MAGISTRATE JUDGE